Case 1:21-cv-00180 Document 13 Filed on 07/08/22 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
July 08, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESQUIO TORREZ, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:21-cv-180 | |
| § | | |
| KILOLO KIJAKAZI, § | | |
| ACTING COMMISSIONER OF § | | |
| SOCIAL SECURITY, § | | |
|     Defendant. § | | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Esquio Torrez ("Torrez"). Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be denied. This recommendation follows from the fact that there is substantial evidence to support the findings of the Administrative Law Judge ("ALJ"). Moreover, the additional evidence submitted by Torrez does not alter this conclusion.

**I. Background**

    **A. Procedural History**

On March 6, 2020, Torrez applied to receive Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 7-3, p. 27.[1] Torrez claimed that his disability effective date was May 10, 2016. Id.

On May 27, 2020, Torrez's claim was initially denied. Dkt. No. 7-4, pp. 117-118. On August 17, 2020, after reconsideration, Torrez's claim was again denied. Dkt. No. 7-6, p. 189. On January 13, 2021, a hearing was held before an ALJ. Dkt. No. 7-3, p. 51. On January 22, 2021, the ALJ decided that Torrez was not entitled to benefits. Id, p. 39. On

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

1

September 24, 2021, the Appeals Council denied Torrez's timely request for review. Id, p. 1. Torrez has sought timely review of the Commissioner's decision in this Court.

### B. Factual Context

Torrez was born in August 1978 and was 37 years old at the time of his claimed disability onset date. Dkt. No. 7-4, p. 117.

Torrez had previously worked as a home health aide for several companies prior to his alleged disability onset date. Dkt. No. 7-10, p. 314.

The ALJ found that Torrez suffered from "diabetes; obstructive sleep apnea ("OSA"); cataracts; major depressive disorder; and anxiety." Dkt. No. 7-3, p. 30. Torrez argues that the Appeals Council failed to consider additional evidence regarding his disabilities and his ability to work. The evidence centers on his mental capabilities, so the Court will focus on that aspect of his medical history.

### C. Torrez's Medical History

During his treatment and the disability process, Torrez was examined by multiple doctors. A summary of their observations and findings follows.

On May 15, 2019, Torrez went to Tropical Texas Behavioral Health to "re-open his case" with them, after having been previously treated for major depressive disorder in 2009. Dkt. No. 7-15, p. 528. He reported that over the previous year, he had been suffering from anxiety attacks roughly 2-3 times per day. Id. Torrez also reported experiencing auditory and visual hallucinations, including a voice that encouraged him to commit suicide. Id.

At an intake appointment on May 24, 2019, Torrez reported that he "felt like attacking my wife about three weeks ago, but I refrained from that." Dkt. No. 7-15, p. 532. It was noted that Torrez was prescribed klonopin and Zoloft for his depression and anxiety. Id., p. 536. Torrez was diagnosed with recurring major depressive disorder. Id., p. 544.

On May 30, 2019, Torrez had a psychiatric evaluation at Tropical Texas. Dkt. No. 7-15, p. 579. The evaluation diagnosed Torrez with panic disorder and insomnia, as well as the recurring major depressive disorder. Id., p. 587. He was prescribed further Zoloft as

well as Seroquel and hydroxyzine for his anxiety and insomnia. Id., p. 593.

On June 25, 2019, Torrez was seen for a follow-up visit at Tropical Texas. Dkt. No. 7-15, p. 599. It was noted that Torrez presented with "good insight and judgment" during the visit. Id. Torrez reported seeing "shadows and figures who tell him to hurt himself, but he does not listen to them." Id. It was also noted that Torrez was withdrawn and depressed during the visit. Id.

On August 16, 2019, Torrez was seen for further follow-up and screening. Dkt. No. 7-15, p. 623. Torrez reported experiencing dizzy spells if he was active for too long. Id. He also noted that he often suffered flashbacks to verbal abuse his stepfather inflicted on him during childhood. Id., pp. 615, 623.

On August 22, 2019, Torrez had another follow-up visit, where he reported that his depression, anxiety, and sleep "are doing better." Dkt. No. 7-15, p. 638. He reported that his panic attacks "are pretty much gone." Id. The doctor noted that Torrez was "[o]verall doing ok, no changes." Id., p. 645.

On September 26, 2019, Torrez had another follow up appointment. Dkt. No. 7-15, p. 654. At that appointment, Torrez agreed to start cognitive processing therapy once a week for an hour to help him address any post-traumatic stress disorder that he was suffering. Id., pp. 654-56.

On September 30, October 16, and October 22, 2019, Torrez had cognitive processing therapy sessions at Tropical Texas. Dkt. No. 7-16, pp. 656-76.

On November 13, 2019, Torrez had another follow-up appointment. Dkt. No. 7-17, p. 789. He reported that his depression and energy had improved and said that was "doing well overall." Id.

On February 5, 2020, Torrez had a follow-up appointment. Dkt. No. 7-16, p. 704. He presented with "good insight and judgment." Id. Torrez stated that he was compliant with his medications and that the medication had "been helping him manage his symptoms." Id., p. 705.

On March 5, 2020, Torrez had another follow-up appointment, where he reported continuing to take his medication and no other changes to his health. Dkt. No. 7-16, pp. 708-10.

On May 1, 2020, Torrez had a checkup with his primary care physician, Dr. Frank Torres. Dkt. No. 7-18, p. 861. Torrez was diagnosed with chronic kidney disease, due to diabetes mellitus, hyperlipidemia, microalbuminuria, and cataracts. Id., p. 865.

On May 27, 2020, Torrez had a follow-up appointment via videoconferencing with Tropical Texas. Dkt. No. 7-18, p. 829. He was "withdrawn" and had "difficulty understanding" during the appointment. Id.

On June 17, 2020, Torrez had another follow-up appointment, where he reported that his depression had improved. Dkt. No. 7-18, p. 834. He stated that he was sleeping better and that his panic attacks had subsided. Id.

On July 7, 2020, Torrez had a telephonic checkup with Tropical Texas. Dkt. No. 7-18, p. 840. He reported being compliant with his medications, but the doctor noted that he had not refilled his prescriptions since April 2020, casting doubt on the accuracy of his claim. Id.

On July 15, 2020, Torrez had a follow up visit with Dr. Torres. Dkt. No. 7-18, p. 867. It was noted that Torrez's mood was flat. Id., p. 870. No other changes were noted. Id., p. 871. Similar results were noted by Dr. Torres during follow-up visits on October 9, November 5, and December 14, 2020. Dkt. No. 7-18, pp. 889-904.

**D. Disability Evaluations**

Two state agency consultants – Dr. Leela Reddy and Dr. Sarah Jackson – reviewed Torrez's medical records regarding his mental abilities as part of the SSD process.

**1. Dr. Leela Reddy**

On May 26, 2020, Dr. Reddy, a state agency medical consultant, reviewed Torrez's medical records in determining a residual functional capacity assessment. Dkt. No. 7-4, p. 98. Dr. Reddy found that Torrez suffered from depressive disorders and diabetes mellitus. Id., p. 94.

Dr. Reddy opined that Torrez was moderately limited in his abilities to: (1) "understand and remember detailed instructions"; (2) "carry out detailed instructions"; (3) "maintain attention and concentration for extended periods"; (4) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (5) "sustain an ordinary routine without special supervision"; (6) "work in coordination with or in proximity to others without being distracted by them"; (7) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (8) "interact appropriately with the general public"; (9) "accept instructions and respond appropriately to criticism from supervisors"; (10) "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; (11) "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness"; (12) "respond appropriately to changes in the work setting"; and (13) "set realistic goals or make plans independently of others." Dkt. No. 7-4, pp. 96-98.

### 2. Dr. Sarah Jackson

On August 11, 2020, Dr. Jackson, a state agency medical consultant, also reviewed Torrez's medical records to assess his residual functional capacity. Dkt. No. 7-4, p. 130. She found the identical results. Specifically, Dr. Jackson found that Torrez suffered from depressive disorders and diabetes mellitus. Id., p. 126.

Moreover, Dr. Jackson opined that Torrez was moderately limited in his abilities to: (1) "understand and remember detailed instructions"; (2) "carry out detailed instructions"; (3) "maintain attention and concentration for extended periods"; (4) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (5) "sustain an ordinary routine without special supervision"; (6) "work in coordination with or in proximity to others without being distracted by them"; (7) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (8) "interact appropriately with the general public"; (9) "accept

instructions and respond appropriately to criticism from supervisors"; (10) "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; (11) "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness"; (12) "respond appropriately to changes in the work setting"; and (13) "set realistic goals or make plans independently of others." Dkt. No. 7-4, pp. 128-30.

In contrast to Dr. Reddy, Dr. Jackson also opined that Torrez "can understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting." Id., p. 130.

Before turning to and examining the specifics of the ALJ's decision in Torrez's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. ' 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. ' 404.1520; Keel v. Saul, 986 F.3d 551, 555 (5th Cir. 2021). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014). If at any stage the claimant fails to make the required showing, the evaluation process stops, and the claimant is determined to not be disabled. Id.

### A. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. ' 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties"

and is "done (or intended) for pay or profit." 20 C.F.R. ' 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. ' 404.1520(b).

### B. Step Two

The second step of the process requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. ' 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. ' 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. ' 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. ' 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### C. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. ' 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. ' 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. ' 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. ' 404.1520(e).

### D. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. ' 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. ' 404.1560(b)(1).

### 1. Residual Functional Capacity.

Residual functional capacity ("RFC") "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 CFR ' 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. ' 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 CFR ' 404.1529(b). The ALJ proceeds to the second step only if the Claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities.

8

SSR 96-7p. This includes the symptoms and impacts of depression and anxiety. Dickerson v. Colvin, No. 3:12-CV-131 CDL, 2013 WL 5676639, at *6 (M.D. Ga. Oct. 16, 2013).

In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### E. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. ' 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. ' 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. ' 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings,

the claimant is found to be disabled and is entitled to disability benefits. Id.

If the ALJ finds that the claimant is not disabled, the claimant can seek review with the Appeals Council. 20 C.F.R. § 404.970. As relevant here, the Appeals Council will review the case if the claimant provides "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." § 404.970(a)(5). The claimant must demonstrate "good cause" for why the evidence was not submitted to the ALJ prior to the hearing. § 404.970(b).

### III. The ALJ's Decision

In step one, the ALJ found that Torrez had not engaged in substantial gainful activity since April 10, 2019. Dkt. No. 7-3, p. 29.

In step two, the ALJ found that Torrez suffered from diabetes, obstructive sleep apnea, cataracts, major depressive disorder, and anxiety. Dkt. No. 7-3, p. 30.

The ALJ – in her step three analysis – found that Torrez did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 7-3, p. 32.

In step four, the ALJ found that Torrez had the RFC to perform sedentary work. Dkt. No. 7-3, p. 33. The ALJ did note that Torrez was limited to: "occasional climbing, no ladders, ropes, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; must avoid excess light; must avoid excess noise; cannot operate a motor vehicle; and must avoid hazards, including heights and moving machinery." Id. She also determined that Torrez was mentally able to "understand, remember, and carry out simple, routine, repetitive instructions; can tolerate occasional interaction with supervisors, coworkers, and the public; and requires low stress jobs, defined as no production rate paced work, only occasional changes in job setting, and only occasional decision-making responsibilities." Id.

As to Torrez's physical limitations, the ALJ found the opinions from the state agency consultants to be "partially persuasive," but noted that Torrez's prescriptions for medications to control dizziness meant that he was more physically limited than they gave him credit for. Dkt. No. 7-3, p. 37. The ALJ further found that the mental limitation opinions by the agency consultants were supported "by the outpatient treatment records showing reports of symptoms from depression and anxiety, hallucinations, and some paranoia, but that his symptoms were generally controlled on medications." Id.

The ALJ found that Torrez was unable to perform his past relevant work as a home health aide. Dkt. No. 7-3, p. 37.

Based upon the testimony of the vocational expert, in step five, the ALJ found that there were sufficient jobs in the national economy, such as a mail sorter, toy stuffer or video monitor[2] that Torrez could still perform. Dkt. No. 7-3, pp. 38-39.

Based upon Torrez's RFC and his ability to still perform certain work, the ALJ concluded that Torrez was not disabled. Dkt. No. 7-3, p. 39.

In Torrez's appeal to the Appeals Council, he submitted several new pieces of evidence. Dkt. No. 7-3, p. 2. He submitted a letter from Dr. Torres, dated July 30, 2019. Id., p. 50. In that letter, Dr. Torres noted that Torrez suffered from "development delay and dyslexia which keeps him from being gainfully employed." Id. It noted that Torrez "cannot deal with stressful situations," and that such situations trigger "debilitating" migraine headaches. Id. The letter concluded, "[t]aken as a whole, I feel that Esquio is permanently medically disabled." Id.

Torrez also submitted treatment notes from Dr. Torres, which were from an office visit on March 17, 2021. Dkt. No. 7-3, p. 2. The notes indicate that Torrez continued to suffer from anxiety and depression but was taking his medications and felt his condition was "stable." Id., p. 15. Dr. Torres noted that Torrez's appearance was neat and that he

---

[2] The vocational expert testified that a video monitor is someone who watches video surveillance feeds, such as for a central alarm company. Dkt. No. 7-3, p. 81.

11

had normal speech, eye contact and motor activity, but that his affect was "flat." Id., p. 17. The notes also stated that Torrez was depressed, had suicidal ideation, and was suffering from auditory hallucinations. Id. Dr. Torres's notes included a questionnaire that reflected a finding showing that Torrez was suffering from severe anxiety and depression. Id., pp. 18-21.

In rejecting Torrez's appeal, the Appeals Council held that the July 2019 letter from Dr. Torres "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." Dkt. No. 7-3, p. 2. It further held that the treatment notes came after the ALJ's decision, so they did not "relate to the period at issue." Id.

## IV. Applicable Law

### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. ' 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

"[T]he record before the Appeals Council constitutes part of the record upon which the final decision is based." Higginbotham v. Barnhart, 405 F.3d 332, 337 (5th Cir. 2005). Thus, if a claimant submits new evidence to the Appeals Council, that evidence is part of the total record before the Court. Id. The Court "must examine all of the evidence,

including the new evidence submitted to the [Appeals Council], and determine whether the Commissioner's final decision to deny Sun's claim was supported by substantial evidence." Sun v. Colvin, 793 F.3d 502, 510 (5th Cir. 2015).

"When a claimant submits new evidence to the Appeals Council, the Council must consider the evidence if it is new and material and if it relates to the period on or before the ALJ's decision." Hardman v. Colvin, 820 F.3d 142, 150 (5th Cir. 2016) (internal quotation marks omitted).

The Court must consider whether the new evidence "dilute[s] the record to the point that the ALJ's ultimate finding is insufficiently supported." Higginbotham v. Barnhart, 163 Fed. App'x 279, 282 (5th Cir. 2006). "[E]ven when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." Hardman, 820 F.3d at 151 (quoting Sun, 793 F.3d at 511-12).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Jones v. Saul, 834 Fed. App'x 839, 840 (5th Cir. 2020) ("the harmless error doctrine applies to social security cases") (citing Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988)). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Graves v. Colvin, 837 F.3d 589, 593 (5th Cir. 2016).

**V. Analysis**

Torrez raises one overarching claim: that the evidence he submitted to the Appeals Council shows that the Commissioner's decision that he was not disabled was not supported by substantial evidence. Torrez's claim fails because the evidence he submitted does not dilute the record to the point that the decision is insufficiently supported.

As previously noted, Torrez submitted two pieces of evidence: (1) the July 2019 letter from Dr. Torres, and (2) the March 2021 treatment notes from Dr. Torres. The Court

will address each of these in turn.[3]

### A. July 2019 Letter

The July letter does not meaningfully call into question the ALJ's conclusions.

In the July letter, Dr. Torres makes two points: (1) that Torrez "cannot deal with stressful situations" because they provoke "debilitating" migraines, and (2) that Torrez "is permanently medically disabled." Dkt. No. 7-3, p. 50. As to the first point, the ALJ's determination of Torrez's RFC is consistent with Dr. Torres's statements about stressful situations. Torrez argues that Dr. Torres opined that he could handle "no stress." Dkt. No. 10-1, p. 16. Dr. Torres simply stated that Torrez could not "deal with stressful situations"; the Court does not read this as an opinion that Torrez was incapable of handling any stress at all. The ALJ found that Torrez "requires low stress jobs, defined as no production rate paced work, only occasional changes in job setting, and only occasional decision-making responsibilities." Dkt. No. 7-3, p. 33. The ALJ's finding was entirely consistent with Dr. Torres's opinion. See Giles v. Astrue, 433 F. App'x 241, 248 (5th Cir. 2011) (ALJ's decision was supported by substantial evidence where doctor opined that the claimant "has a poor ability to deal with work stress, and the vocational expert testified that the recommended alternate jobs were appropriate for an employee who could not handle high stress job environments.").

Dr. Torres's opinion that Torrez is "permanently medically disabled" is not particularly relevant to the Social Security disability proceedings. A doctor's opinion that a patient is disabled or unable to work is not entitled to any "special significance" because that determination is reserved for the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). Such an opinion is not considered to be a medical opinion. Id. As such,

---

[3] The Commissioner argues that Torrez has not shown good cause for why the evidence could not have been timely submitted to ALJ, which is a prerequisite for the Appeals Council to consider the evidence. 20 C.F.R. § 404.970(b). However, the Appeals Council did not cite this as a basis for rejecting the evidence. Dkt. No. 7-3, p. 2. The Court will not reject this evidence on a basis that was not cited by the Appeals Council. Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014) (the Court "may affirm only on the grounds that the Commissioner stated for his decision."). This holding does not alter the ultimate recommendation in this case.

this statement does not call the ALJ's conclusions into question.

### B. March 2021 Treatment Notes

The Appeals Council rejected the treatment notes on the basis that they did not relate to the period in question, which was between April 10, 2019 – the alleged onset date of his disability – and January 22, 2021 – the date of the ALJ's decision. This finding was not in error and if it was in error, any error was harmless.

The treatment notes were part of "follow-up" visit regarding Torrez's anxiety and depression. Dkt. No. 7-3, p. 15. The notes indicated that Torrez suffered from "developmental delay," Type 2 diabetes with mixed hyperlipidemia and "severe" generalized anxiety disorder. Dkt. No. 7-3, p. 11. As part of the checkup, Torrez filled out questionnaires about his anxiety and depression, which used his answers to calculate the severity of his conditions. Id., pp. 18-21. The calculations showed that Torrez's anxiety and depression was "severe." Id. The follow-up visit did not result in any new diagnosis or in any changes to his medication.

The fact that the doctor's visit came after the ALJ's decision is not dispositive of whether they relate to the period in question. This is because subsequent medical evidence may shed light on conditions that existed prior to the ALJ's decision. Loza v. Apfel, 219 F.3d 378, 396 (5th Cir. 2000). For example, if a doctor diagnoses a claimant with Post-Traumatic Stress Disorder after the ALJ's decision, but based on diagnostic evidence that existed prior to the ALJ's decision, the diagnosis would relate to the period in question. Id.

Similarly, if a doctor diagnosed a claimant with autism after the ALJ's decision, but the diagnosis was based on medical evidence that existed prior to the decision, the diagnosis would relate to the period in question. Meeks on behalf of Z.M.B. v. Saul, 2021 WL 2384795, at *7 (S.D. Tex. Apr. 27, 2021), report and recommendation adopted sub nom. Meeks v. Saul, 2021 WL 2381898 (S.D. Tex. June 10, 2021). However, "evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition" is not considered material to the period in question. Hunt v. Barnhart, 159 Fed. App'x 569, 572 (5th Cir. 2005) (citing Haywood v. Sullivan, 888 F.2d 1463, 1471

(5th Cir. 1989)).

The treatment notes did not relate to the period at issue. There is no indication in the record that Dr. Torres used information from the period between April 2019 and January 2021 to arrive at any new conclusions regarding Torrez's conditions. Indeed, the treatment notes offer no new medical opinions about Torrez's disabilities. Indeed, in the cases where the evidence related to the period at issue, it concerned a medical opinion that drew on evidence that was part of the period at issue. Meeks, 2021 WL 2384795 at *7 (autism diagnosis); Nobles v. Saul, 2020 WL 5996437, at *12 (N.D. Tex. Sept. 21, 2020), report and recommendation adopted, 2020 WL 5994269 (N.D. Tex. Oct. 9, 2020) (opinion about claimant's intellectual function); Hamilton v. Berryhill, 2018 WL 2074811, at *6 (S.D. Miss. May 3, 2018) (opinion about hip/foot pain); Micho H. v. Kijakazi, 2022 WL 1750050, at *3 (N.D. Tex. May 12, 2022), report and recommendation adopted, 2022 WL 1747944 (N.D. Tex. May 31, 2022) (new opinion about RFC); Charles A. v. Berryhill, 2019 WL 1130260, at *3 (N.D. Tex. Feb. 22, 2019), report and recommendation adopted, 2019 WL 1128836 (N.D. Tex. Mar. 12, 2019) (same); Bond v. Comm'r of Soc. Sec., 2020 WL 7687139, at *4 (N.D. Tex. Nov. 12, 2020), report and recommendation adopted, 2020 WL 7253369 (N.D. Tex. Dec. 10, 2020) (same). Because the treatment notes do not pertain to the relevant time period, they are not material, and the Appeals Council did not err in rejecting them. Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir. 2008).

Furthermore, even if the records were considered, they would not change the outcome. As previously noted, the new evidence must "dilute the record to the point that the ALJ's ultimate finding is insufficiently supported." Higginbotham, 163 Fed. App'x at 282. The treatment notes do not undercut or dilute the ALJ's findings in any significant way and are largely consistent with those findings.

This administrative appeal should be denied.

## VI. Recommendation

It is recommended that the petition for review of the denial of Disability Insurance Benefits filed by Esquio Torrez be denied.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on July 8, 2022.

Ronald G. Morgan
United States Magistrate Judge